UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| QUINTON BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:24-CV-00050-JAR |
| ) | |
| ANDREW BAILEY, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Before the Court is the motion of Quinton Brown, a prisoner, for leave to proceed in forma pauperis in this civil action. The Court has reviewed the motion and the financial information provided in support, and has determined to grant the motion and assess an initial partial filing fee of $55.72. The Court has also reviewed the complaint, and will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B) and deny Plaintiff's pending motions.

### **28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has filed a certified inmate account statement that shows average monthly deposits of $153.62, and an average monthly balance of $278.64 calculated from the date of Plaintiff's payroll deposits on the tenth day of each month. Applying the terms of the statute, 20 percent of the greater of those figures is $55.72. Accordingly, the Court will assess an initial partial filing fee of $55.72, and order Plaintiff to pay that sum to the Clerk of Court within thirty days of the date of this order.

### Legal Standard on Initial Review

This Court is required to review a complaint filed in forma pauperis, and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.". Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

District courts must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," courts should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). District courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, or interpret procedural rules in a manner that excuses the mistakes of those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is incarcerated at the Moberly Correctional Center (MCC). He filed the complaint pursuant to 42 U.S.C. § 1983 against the following 16 defendants: Andrew Bailey (the Missouri Attorney General), Trevor Foley (Acting Director of the Missouri Department of Corrections), and Rusty Ratliff (the MCC Warden); Correctional Officers Sgt. Unknown Heth, Sgt. Unknown Peepers, Sgt. Unknown Murrele, C.O. 1 Unknown Baker, C.O. 1 Unknown Riley, and C.O. 1 Unknown Holmes; Nurses Jena Unknown,[1] M. Wallace, Lisa Unknown, Stephanie Unknown, and Joyce Unknown; Director of Nursing Unknown Zamora; and Dr. Paul Tippen. Plaintiff specifies that he sues the defendants in their individual capacities.

The complaint consists of a completed complaint form, and additional typewritten pages. Where the complaint form provides space for Plaintiff to state the facts supporting his claims, he describes events that occurred on January 17, 2022 and involved Defendants Heth and Nurse Jen. Plaintiff sets forth his factual allegations in a disorganized and confusing manner. He writes:

---

[1] In setting forth his factual allegations and prayer for relief, it appears Plaintiff refers to this Defendant as "Nurse Jen." The Court will also refer to this Defendant using that name.

3

On the 17th day of January, 2022, at around 3:30am, in the morning, I was woke up and was told to get ready for [DIALYSIS, inwhich I did. Sgt. Heth (Blue Shirt Officer) then came to my door (in the Ad. Seg. Unit) to escort me. When he arrived with HANDCUFFS AND SHACKLES, I asked him :"DO YOU HAVE THE CART", in response - he then slammed my FOOD SLOT FLAP down and walked off. And as he was walking off, he said: "I'm not a F*****g DOCTOR". [**ALL THIS CAN BE REVIEWED FROM THE SECURITY CAMERAS POSTED IN AD. SEG. ON THAT PARTICULAR DATE AND TIME**] (CELL AREA 2 HOUSE, C WING, CELL 506). So as I am waiting to be taken to my APPOINTMENT for DIALYSIS by the Sgt, waiting on him to return, I asked the WING DOCTOR: 'where did he go?', and 'whats going on?' [**AGAIN REVIEW THE CAMERAS FOR VERIFICATION**]. They then called him back, and when he came back to my CELL DOOR 2C-50 6 , I said: "WHAT HAPPENED?", he then informed me: "THE HEAD NURSE IN CHARGE - TOLD HIM THAT I REFUSED MY TREATMENT, BECAUSE I WAS PHYSICALLY [UNABLE TO WALK TO THE ADMINISTRATION BUILDING], with COVID 19 AND LEG RESTRAINTS.
THIS HAD OCCURED AT 3:50am, MONDAY MORNING.
I then told him to call back, I never said anything about not wanting my TREATMENT (AS PRESCRIBED BY A DOCTOR'S ORDER), He then responded - **"NO"**-. I then told him to call back and tell the NURSE (JEN) that I would like to have my treatment, He did, and NURSE JEN said that she already filled my spot, and that she would do my DIALYSIS TREATMENT at 8:00am. So I layed down, and when I woke up, it was 9:53am, the next shift. I called for the WING OFFICER, and told him 'I was suppose to be at DIALYSIS. He then called - and the NURSE told him that I had refused DIALYSIS TREATMENT, **BECAUSE I WAS UNABLE TO WALK FROM 2C-506 TO THE ADMINSTRATION BUILDING**. The Wing Officer then called Ms. Parnell, and the NURSE told her the same thing, Ms. Parnell, and the DIRECTOR of Nursing - both came to my cell and talked with me, and informed me that there was **"NOTHING THEY CAN DO ABOUT IT"**, BECAUSE DIALYSIS AND MEDICAL WAS UNDER TWO DIFFERENT COMPANIES. They then said that they would put in an IOC - that I did not recieve my DIALYSIS TREATMENT on Monday January 17th, 2022.
NURSE JEN knows the risk of me SHORTENING MY LIFE-SPAN because of BONE AMNESIA and FLUID OVERLOAD, and still denied me my TREATMENT based upon an UNPROFFESSIONAL OPINION, not guided by a DOCTOR (DISREGARDING A DOCTORS ORDERS). Establishing all unprofessional wrongdoing, negligence, and incompetence of a trained NURSE.
**I then proceeded to file all my ADMINISTRATIVE REMEDIES, in accordance with 42 U.S.C. 1997(e). Because of the threat to my LIFE and LIMBS. and the NEGLIGENCE of all parties involved.**

(ECF No. 1 at 9-10) (emphases in original).[2]

---

[2, 3] This text is quoted verbatim without correction of errors.

4

Where the complaint form provides space for Plaintiff to describe his injuries, he writes: "negligence, deliberate indifference, -wrongful actions, . . . actions that could have resulted in permanent injury – even death, disregard of a doctor's orders, substantial risk of serious harm, cruel and unusual punishment . . . personal rights violation, infliction of pain and suffering by staff, medical, and officer's on duty, [reckless], [malicious], and [oppressive] actions that resulted in infliction of pain and suffering." *Id.* at 10 (emphasis omitted, brackets in original).[3] Plaintiff states he wrote letters to State of Missouri "administrative heads." *Id.* at 13 (emphasis omitted).

Attached to the complaint form is a typewritten section titled "Request for Relief" in which Plaintiff demands $16,012,500 in damages. *Id.* at 17. Plaintiff claims that Foley, Ratliff, and Attorney General Bailey knew or should have known that wrongdoing was occurring and failed to act, and he claims they were incompetent and negligent. Plaintiff claims that Heth, Peepers, Baker, Riley, Holmes, and Murrele are liable for their "wrongful actions, negligence, deliberate indifference, and reckless, malicious, and oppressive actions that resulted in pain and suffering." *Id.* at 19 (emphasis omitted). Plaintiff also states the Defendants' actions could have caused permanent injury or death. Plaintiff claims that "Jena (Dialysis Supervisor)," M. Wallace, Dr. Tippen, and Nurses Lisa, Stephanie, and Joyce are liable for their negligence, refusal to act to comply with a doctor's order, failure to act and wrongful actions, incompetence, and reckless, malicious, and oppressive actions that inflicted pain and suffering." *Id.* at 20 (emphasis omitted).

Attached to the complaint are copies of Plaintiff's Informal Resolution Request ("IRR"), Grievance, and Grievance Appeal concerning the January 17, 2022 incident. In the October 25, 2022 grievance appeal response, Nurse Wallace and Dr. Tippen concluded that review of Plaintiff's medical records and grievance documents, along with their independent investigation, showed that Plaintiff did not go to his dialysis appointment on January 17, 2022. They noted that

5

Plaintiff wanted to be transported in a cart, but there was no medical documentation that he had difficulty walking or needed an assistive device. They also noted that Plaintiff's dialysis appointments were scheduled, and he was expected to actively participate in his health care.

Also attached to the complaint are copies of grievance documents concerning a November 9, 2022 incident involving Defendants Riley, Murrele, and Holmes, and a January 5, 2024 incident involving Defendants Peepers and Baker. It appears Plaintiff included these grievance documents in an attempt to assert claims against those named Defendants. Plaintiff alleges as follows.

On November 9, 2022, Riley escorted Plaintiff from his cell to get ready for a dialysis appointment. He placed Plaintiff in restraints and walked him to the rotunda, and Holmes walked Plaintiff out of the housing unit. Plaintiff walked to a nearby cart, and Holmes asked Murrele if they were taking the cart. Murrele said no. Plaintiff pointed out that he was wearing shackles and had fluid around his ankles and in his lungs, and therefore could not walk to the appointment. Murrele told Plaintiff he could either walk, or refuse treatment. Plaintiff argued with Murrele, and Murrele concluded that Plaintiff was refusing treatment and walked him back to his cell.

On the way back to his cell, Plaintiff told Riley he needed to self-declare a medical emergency because he had sore ankles and breathing problems. Riley told Plaintiff the nurse would be there in an hour, and Plaintiff would need to wait for her. However, the unidentified nurse never checked on Plaintiff. Plaintiff complained that Murrele jeopardized his life by wrongfully denying him dialysis, and he complained he was neglected by the nurse and the dialysis provider. It is unclear how prison officials resolved the matter.

On January 5, 2024, Peepers went to Plaintiff's cell to escort him to dialysis. Plaintiff was wearing a fleece jacket, t-shirt, long underwear, socks, and shoes. Peepers escorted Plaintiff through the rotunda, and they encountered Baker. Peepers and Baker laughed at what Plaintiff

6

was wearing, and Peepers called Plaintiff a racially derogatory name. Peepers escorted Plaintiff outside, where it was cold and snowy, and threatened to slam Plaintiff down if he jerked away from him. Plaintiff stated he wanted Peepers and Baker held accountable. It is indicated that prison officials investigated the matter and discussed it with Plaintiff, and found no evidence of cruel and unusual punishment.

Also attached is an informal resolution request dated January 19, 2024 in which Plaintiff stated that nurses administered his dialysis treatments every Monday, Wednesday, and Friday, and he wanted to know their full names. Finally, Plaintiff attached a letter he wrote to Attorney General Bailey demanding "[JUST COMPENSATION] before this case is taken before the U.S. DISTRICT COURT for a great Multi-Million Dollar Civil Action," and a similar letter addressed to Foley. (ECF No. 1-1 at 13) (emphasis in original).

## Discussion

Plaintiff can be understood to claim he received constitutionally-inadequate medical care on January 17, 2022 and November 9, 2022. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted). "To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs." *Id.* This type of claim has both an objective and subjective component. *Beard v. Falkenrath*, 97 F.4th 1109, 1118 (8th Cir. 2024) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

First, the inmate must show he had an objectively serious medical need, which is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*,

7

73 F.3d 174, 176 (8th Cir. 1995) (internal citation omitted). Second, the inmate must show that subjectively, the defendant actually knew of, but deliberately disregarded, that need. *Beard*, 97 F.4th at 1118 (citations omitted). "Deliberate disregard" is "a mental state equivalent to criminal-law recklessness." *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018). Plaintiff must show that the defendant's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). Allegations establishing that prison officials were negligent, or even grossly negligent, are generally insufficient to state a valid claim of medical mistreatment under the Eighth Amendment. *Francisco v. Corizon Health, Inc.*, 108 F.4th 1072, 1077 (8th Cir. 2024); *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 390 (8th Cir. 2014).

The Court first addresses Plaintiff's allegations against Heth and Nurse Jen stemming from the January 17, 2022 incident. Plaintiff alleges that he required dialysis, which is a serious medical need. Plaintiff also alleges that Heth arrived to escort him to dialysis and that Nurse Jen was to administer dialysis, so it is clear that the Defendants knew of Plaintiff's serious medical need. What is missing, however, are allegations that Heth and Nurse Jen were deliberately indifferent to that need.

Plaintiff's allegations establish that Heth tried to escort Plaintiff to the appointment, but left when Plaintiff indicated he wanted to be transported by cart, which it appears Heth did not have. Plaintiff alleges he was unable to walk because he had COVID 19 and leg restraints, but he does not explain how that rendered him unable to walk, he does not allege he had a documented problem with walking or need for an assistive device, and he does not allege he had an obvious inability to walk. Plaintiff's allegations establish that he chose not to cooperate with Heth's attempt to escort him, not that Heth was deliberately indifferent to Plaintiff's need for dialysis.

8

Additionally, Plaintiff alleges that Heth returned to discuss the matter, called Nurse Jen, and told Plaintiff that Nurse Jen had rescheduled his appointment for 8:00 a.m. Those allegations certainly fail to show that Heth or Nurse Jen deliberately disregarded Plaintiff's serious medical need. Finally, Plaintiff's allegations establish that he missed the 8:00 a.m. dialysis appointment because he went back to sleep and did not wake up in time, not because Heth, Nurse Jen, or any other defendant was deliberately indifferent to his need for dialysis.

In sum, Plaintiff's allegations do not show that Heth or Nurse Jen's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson*, 756 F.3d at 1066. He therefore fails to state a plausible Eighth Amendment claim against Heth or Nurse Jen. To the extent Plaintiff claims Heth and/or Nurse Jen negligently failed to ensure he kept his dialysis appointment, such allegations do not state a claim of constitutional dimension. *See Francisco,* 108 F.4th at 1077; *Fourte,* 746 F.3d at 390 (citation omitted) (allegations establishing that prison officials were negligent, or even grossly negligent, are insufficient to state a valid claim of medical mistreatment under the Eighth Amendment).

The Court now addresses Plaintiff's allegations against Riley, Murrele, and Holmes stemming from the November 9, 2022 incident. Plaintiff's allegations establish that he had a serious medical need, and they establish that Riley, Murrele, and Holmes knew of that need. However, Plaintiff's allegations do not establish that Riley, Murrele, or Holmes were deliberately indifferent to that need.

Plaintiff's allegations establish that Riley and Holmes began escorting him to the appointment, and Murrele refused Plaintiff's request to be transported by cart. Plaintiff states he could not walk because he was wearing shackles and had fluid around his ankles and in his lungs. However, as above, he does not explain how those conditions rendered him unable to walk, he

9

does not allege that his inability to walk was obvious to Riley, Murrele, or Holmes, and he does not allege he had a documented problem with walking or need for an assistive device. In fact, as noted above, Nurse Wallace and Dr. Tippen noted in October of 2022 that review of Plaintiff's chart showed no indication of trouble walking or the need for an assistive device. Plaintiff's allegations establish that he chose not to cooperate with the Defendants when they tried to escort him to his appointment, not that the Defendants deliberately disregarded his serious medical need.

Plaintiff also alleges that an unidentified nurse failed to check on him, and he alleges that Riley told him that Murrele did not come get him when the nurse arrived. Plaintiff's allegations establish, at most, a mere possibility of misconduct. They do not permit the inference that the unidentified nurse or Murrele actually knew of, and yet deliberately disregarded, a serious medical need.

In sum, Plaintiff's allegations do not show that the actions or inactions of these Defendants were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson*, 756 F.3d at 1066. He therefore fails to state a plausible Eighth Amendment claim against Riley, Murrele, Holmes, and the unidentified nurse. To the extent Plaintiff claims that Riley, Murrele, and Holmes negligently failed to ensure he kept his dialysis appointment or the unidentified nurse negligently failed to check on him, such allegations do not state a claim of constitutional dimension. *See Francisco,* 108 F.4th at 1077; *Fourte,* 746 F.3d at 390 (citation omitted) (allegations establishing that prison officials were negligent, or even grossly negligent, are insufficient to state a valid claim of medical mistreatment under the Eighth Amendment).

Additionally, the Court finds that nothing in Plaintiff's complaint indicates that the January 17, 2022 and November 9, 2022 incidents are evidence of a pattern of denial of health care or system-wide deficiency. In fact, in his January 19, 2024 IRR, Plaintiff states he receives dialysis

three times per week. Without evidence of a threat of harm from a system-wide deficiency, the two isolated incidents do not rise to the level of deliberate indifference. *See Dulany*, 132 F.3d at 1245.

Plaintiff can also be understood to claim that Peepers escorted him to dialysis on January 5, 2024 while he (Plaintiff) was wearing minimal clothing, and Peepers used racially discriminatory language and threatened to slam him down if he pulled away. A threat can be actionable if it rises to the level of a "brutal and wanton act of cruelty." *Hopson v. Fredericksen*, 961 F.2d 1374, 1379 (8th Cir. 1992). Here, Plaintiff alleges a single instance of a verbal threat, with no allegations of brutality, wanton cruelty, or coercive pressure. Such allegations do not state a claim of constitutional dimension. Plaintiff also alleges a single use of racially offensive language. While inappropriate, without more, such allegations do not state a claim of constitutional dimension. *See Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (determining that correctional officer's discriminatory statements against Native Americans was not, standing alone, sufficient to state a claim).

Finally, Plaintiff alleges that Peepers walked him outside, where it was cold and snowy. Plaintiff does not allege he was outdoors for a long period of time, and his allegations establish he was wearing a fleece jacket, t-shirt, long underwear, socks, and shoes. To plead a viable Eighth Amendment inhumane conditions of confinement claim, Plaintiff must first show that objectively, he suffered a deprivation that was "sufficiently serious" to deny him "the minimal civilized measure of life's necessities," or to pose "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff's allegations do not meet that standard.

Also named as defendants are Foley, Ratliff, Wallace, Tippen, Lisa Unknown, Stephanie Unknown, Joyce Unknown, Unknown Zamora, and Attorney General Bailey. Plaintiff pleads no

non-conclusory allegations permitting the inference that those Defendants were personally involved in, or directly responsible for, any incident that deprived Plaintiff of a federally-protected right. He therefore fails to state a cognizable claim against them. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Plaintiff does list some of the Defendants' names and state in general terms that they are responsible for negligently failing to remedy violations of his constitutional rights. As explained above, however, Plaintiff's allegations do not establish that his constitutional rights were violated. Also, claims sounding in respondeat superior are not cognizable under § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). Plaintiff also lists the names of other Defendants and alleges, in a wholly conclusory fashion, that they are liable for "wrongful actions, negligence," "reckless malicious, and oppressive actions," "incompetence," and failure to follow a doctor's order. (ECF No. 1 at 17-21). Plaintiff's wholly conclusory allegations are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678.

In sum, the Court finds that the complaint and attachment fail to state a claim upon which relief may be granted against any named defendant, or against any person who could be identified as a defendant. It is unclear to the Court how the complaint could be amended that would state a plausible claim for relief. The Court will therefore dismiss this action at this time pursuant to 28 U.S.C. § 1915(e)(2)(B).

Plaintiff has also filed a motion seeking a temporary injunction to protect him against retaliation by "DEFENDANT'S, DEFENDANT'S FAMILY, DEFENDANT'S FRIENDS, or DEFENDANT'S CO-WORKERS." (ECF No. 4) (emphasis in original). The motion states no valid basis for relief, and will be denied. Finally, the Court will deny as moot Plaintiff's motion

to appoint counsel. The Court "is thoroughly convinced that there is no substantial question for review and that an appeal will be futile." *Higgins v. Steele*, 195 F.2d 366, 369 (8th Cir. 1952). The Court therefore certifies that an appeal would not be taken in good faith. *See id.;* 28 U.S.C. § 1915(a)(3).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion seeking leave to commence this action without prepaying fees or costs (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, Plaintiff must pay an initial filing fee of $55.72. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (ECF No. 3) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking injunctive relief (ECF No. 4) is **DENIED.**

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 12th day of September, 2024.

                                                         _John A. Ross_
                                                         JOHN A. ROSS
                                                         SENIOR UNITED STATES DISTRICT JUDGE